UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

| | | |
|---|---|---|
| | : | 1:11-cv-00867-PGG |
| KATTEN MUCHIN ROSENMAN LLP, | : | |
| | : | |
| | : | DEFENDANT GEROVA FINANCIAL |
| Plaintiff, | : | GROUP, LTD.'S RESPONSE TO THE |
| | : | COURT'S MARCH 21, 2011 ORDER |
| v. | : | TO SHOW CAUSE RE ENTRY OF |
| | : | DEFAULT JUDGMENT |
| GEROVA FINANCIAL GROUP LIMITED , | : | |
| | : | [Affidavit of Eugene Scher in support |
| | : | thereof filed concurrently herewith] |
| Defendant. | : | |

_____

        Defendant Gerova Financial Group, Ltd. ("Gerova") hereby responds to the Court's

March 21, 2011 Order to Show Cause re Entry of Default Judgment ("Order"), and respectfully

requests that default judgment not be entered, that Gerova's default be set aside, and that this

litigation be allowed to proceed on the merits.


## I.    INTRODUCTION.

        Plaintiff Katten Muchin Rosenman LLP ("Katten") served as counsel for Wimbledon

Financing Master Fund Ltd. and Wimbledon Real Estate Financing Master Fund Ltd.

(collectively, the "Wimbledon Parties") in two separate Asset Purchase Agreements

("Agreements") they entered into with – among other parties – Asia Special Situation

Acquisition Corp. ("ASSAC") back in December 2009.  In this action, Katten claims to be a

third party beneficiary under those Agreements, and by its Complaint, seeks to impose successor

liability on Gerova, which it alleges to be the successor in interest to ASSAC.  Worse yet, it

seeks to do so by way of a default judgment, and in direct violation of the express terms of the

Agreements it purports to be suing under.

As Katten's Affidavit for Judgment by Default ("Affidavit") makes clear, Gerova was never properly served with the Summons and Complaint in this action. In fact, Gerova did not become aware of this action, or the default entered against it, until March 28, 2011. As such, any default judgment rendered would be void.

Further, because there was no willfulness in Gerova's default, Katten has not been prejudiced thereby, and Gerova has numerous defenses to the claims brought against it – all as more fully set forth below – good cause exists to set aside the default entered against Gerova. Accordingly, Gerova respectfully requests the Court set aside the default entered against it, and allow Gerova the opportunity to respond to the Complaint and otherwise try this case on the merits.

## II.    STATEMENT OF FACTS.

### a.    <u>Gerova Was Never Served With the Summons and Complaint, and Thus Its Default Was Not Willful.</u>

Katten claims to have filed its Complaint against Gerova on February 8, 2011. Affidavit ¶ 4. As is clear from Katten's Affidavit and the exhibits attached thereto – which include the Affidavit of Service of Summons (and Complaint) filed in this action – Katten personally served Joseph Bianco at his home on February 10, 2011, asserting he was Gerova's "Chief Executive Officer." *See* Affidavit ¶ 5 and Ex. 2 (certificate of service); *See also* Affidavit of Eugene Scher ("Scher Aff.") ¶ 3. Yet, as set forth in Gerova's February 10, 2011 6-K – an SEC filing used by foreign private issuers to provide information that is required to be made public between annual reports – Joseph Bianco was no longer Gerova's CEO, or otherwise affiliated with Gerova, on February 10, 2011. Scher Aff. ¶ 4 and Ex. A.

As set forth in its 6-K, Gerova *announced* on February 10, 2011 that it "has accepted the resignation of four of the members of its board of directors, including Joseph J. Bianco," and indicated it had "earlier accepted the resignation of Joseph J. Bianco as acting CEO." Scher Aff. ¶ 5 and Ex. A. Katten recognizes as much in its Affidavit, where – in seeking leave to serve its Affidavit on Gerova via DHL or Federal Express at its Bermuda headquarters – it indicates Mr. Bianco "has since resigned as Chief Executive Officer of Gerova." Affidavit ¶ 6. Katten simply has the timing wrong as, in fact, Mr. Bianco resigned as Gerova's acting CEO effective December 31, 2010. Scher Aff. ¶ 5.

Further, because Mr. Bianco had already resigned from Gerova's board of directors as of February 8, 2011, he had no affiliation with Gerova as of the date he was served, purportedly on behalf of Gerova. Scher Aff. ¶ 5. Yet not only was Mr. Bianco no longer affiliated with Gerova as of February 10, 2011 but, more importantly, Mr. Bianco **never forwarded the Summons and Complaint** to anyone else at Gerova. *Id.* ¶ 6. As such, Gerova was never even on notice that the instant Complaint had been filed against it. *Id.*

In fact, the first Gerova even learned of this action was when it received Katten's Affidavit and the Court's Order on the evening of March 25, 2011, which did not come to anyone's attention until Monday, March 28, 2011. Scher Aff. ¶ 7. As such, Gerova did not even retain counsel to represent it in this matter until March 30, 2011. *Id.*

Because Gerova was never properly served, good cause exists to relieve Gerova of its default. Scher Aff. ¶ 8.

### b. Gerova Has Substantial Defenses to Liability in this Action.

As recognized in its Complaint, Katten is seeking relief as a third party beneficiary pursuant to Section 9.1 of the Agreements attached as Exhibit A to its Complaint, and has

3

already received a $25,000 partial payment.  Compl. ¶¶ 2-4, 16, 23; *See also* Scher Aff. ¶ 9. What Katten has failed to inform the Court, however, is that pursuant to the express terms of Section 9.1 of those Agreements, had Katten performed all of the obligations it was required to perform – which Gerova expressly disputes – ASSAC was only required to pay, or reimburse the Wimbledon Parties for, Transaction Costs (defined in that section to include "legal … fees and expenses") "up to a maximum amount that … does not exceed $150,000."  Compl. Ex. A § 9.1; *See also* Scher Aff. ¶ 9.  As such, were the Court to find Katten had fully performed under the Agreements – again, a contested factual issue – Katten is entitled ***at most*** to $125,000, and not the over $203,296.56 it seeks by way of its Default Judgment.  Scher Aff. ¶ 9; *See also* Compl. ¶ 35 (seeking $189,468.09 in fees); Affidavit ¶¶ 7-10 (adding prejudgment interest and fees, for a total of more than $203,296.56).  For this reason alone, Katten's request for default judgment must be denied.

Further, Gerova fully intends to raise all available defenses to the Complaint, including but not limited to challenging (i) whether Katten fully performed all of the obligations it was required to perform, under the Agreements or otherwise, (ii) the reasonableness of the fees, (iii) whether successor liability applies to Gerova, (iv) whether Katten was intended by ASSAC or the Wimbledon Parties – or any other parties to the Agreements – to be a third party beneficiary, (v) whether some offset or reduction applies for fees already paid to Katten by the Wimbledon Parties, or other "Transaction Costs" already paid by ASSAC or Gerova, and (vi) whether there was any consideration for the alleged statements by Michael Hlavsa, which occurred well after the deal closed, and whether or to what extent his purported statements legally bound Gerova. Scher Aff. ¶ 10.  Establishing these defenses will require discovery and, quite likely, expert testimony.  *Id.*  Given the above, there is good cause to set aside Gerova's default, and Gerova

4

respectfully requests the Court relieve it of its default, grant it the opportunity to timely respond to the Complaint, and to otherwise proceed to litigate this action on the merits.

### III.  ARGUMENT.

Gerova opposes the entry of any default judgment, and respectfully requests the Court relieve it of its default pursuant to Federal Rule of Civil Procedure 55(c) in conjunction with the Court's scheduled hearing on its Order.  *See Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981) (holding that "[e]ven if a default had been entered, opposition to a motion for a default judgment can be treated as a motion to set aside the entry of a default despite the absence of a formal Rule 55(c) motion") (citations omitted).

### a.  <u>Given Gerova Was Never Served with Katten's Summons and Complaint, Any Default Judgment Entered Thereon Would Be Void.</u>

Given the undisputed evidence that Gerova was not served – let alone properly served – with Katten's Summons and Complaint, any default judgment entered against Gerova would be void.  *See Hawthorne v. Citicorp Data Systems, Inc.*, 219 F.R.D. 47, 49 (E.D.N.Y. 2003) (holding default judgment must be vacated as void, where, as here, service was defective).  As recognized in *Hawthorne*:

> "Fed. R. Civ. Proc. 60(b)(4) states that a judgment may be vacated if the 'judgment is void,' usually meaning that the court had no jurisdiction over the defendant when judgment issued. One common reason that a void judgment issues is because of defective service that fails to properly put a defendant on notice of the complaint against him. Without proper service a court has no personal jurisdiction over a defendant.… Unlike with other Rule 60(b) motions, if a judgment is in fact void the court does not have discretion in deciding whether to vacate the default judgment."  (Citations omitted).

*See also Wing v. East River Chinese Restaurant*, 884 F.Supp. 663, 669 (E.D.N.Y. 1995) (holding one factor to be considered in ruling on an application for entry of default judgment, in "district

judge['s] … 'sound judicial discretion,'" is "whether the court thinks it would be obliged to set aside the default on defendant's motion")

Accordingly, it would be an abuse of discretion under the circumstances to grant Katten its requested default judgment, given the Court would have no discretion were Gerova then forced to move to vacate such judgment as void. For this reason alone, Katten's request for entry of default judgment must be denied.

### b. <u>Good Cause Exists to Set Aside Gerova's Default.</u>

Federal Rule of Civil Procedure 55(c) provides, in relevant part, that "[t]he court may set aside an entry of default for good cause." As set forth above, the Court must not only deny Katten's request for entry of default judgment, but should treat Gerova's Response to the Court's OSC as a motion to set aside the default of Gerova. *Meehan*, 652 F.2d at 276 (holding "opposition to a motion for a default judgment can be treated as a motion to set aside the entry of a default" under Rule 55(c)). Because, as more fully set forth below, Gerova clearly meets the "good cause" standard, the Court should grant it the requested relief from default.

"Under Rule 55(c), the principal factors bearing on the appropriateness of relieving a party of a default are whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." *Meehan*, 652 F.2d at 277 (citations omitted). Further, given the strong judicial preference to have cases heard on the merits, any doubts must be resolved in favor of granting relief from default. *See Hawthorne*, 219 F.R.D. at 49 ("The Second Circuit has often stated its preference that 'litigation disputes be resolved on the merits, not by default.' Therefore, any doubts to be resolved must be resolved in favor of the moving party."); *Meehan*, 652 F.2d at 276 (recognizing "[d]efaults are not favored, particularly when the case presents issues of fact, and doubts are to be resolved in favor of a trial on the

merits," and holding a defendant's 'good cause' showing under Rule 55(c) must meet only a "low threshold" or "lenient standard"); *Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf*, 241 F.R.D. 451, 453-54 (S.D.N.Y. 2007) ("Rule 55(c) determinations are left to the sound discretion of the district court. However, there is a preference for resolving disputes on the merits, and doubts should generally be resolved in favor of the defaulting party.") (citation omitted); *Pecarsky v. Galaxiworld.com Ltd*., 249 F.3d 167, 174 (2d Cir. 2001) ("It is well established that default judgments are disfavored. A clear preference exists for cases to be adjudicated on the merits.") (citations omitted).

The court in *Canfield v. VSH Restaurant Corp*., 162 F.R.D. 431, 433-34 (N.D.N.Y. 1995), went even further:

> "[T]he extreme sanction of a default judgment must remain a weapon of last, and not first, resort. Defaults are reserved for rare occasions and when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party. In other words, 'good cause' and the criteria of Rule 60(b) should be construed generously." (Numerous citations omitted).

*See also Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995) ("Similarly, we have described default judgments as "'the most severe sanction which the court may apply.'"") (citations omitted).

Finally, courts universally recognize that the 'good cause' standard of Rule 55(c) is less stringent than the standard for setting aside a judgment pursuant to Federal Rule of Civil Procedure 60. *See*, *e.g.*, *Meehan*, 652 F.2d at 276 (holding "the standard for setting aside the entry of a default pursuant to Rule 55(c) is less rigorous than the 'excusable neglect' standard for setting aside a default judgment by motion pursuant to Rule 60(b)"); *Broder v. Charles Pfizer & Co.*, 54 F.R.D. 583 (S.D.N.Y. 1971) ("The test under Rule 55(c) for setting aside a default is more lenient than the test under Rule 60(b) for setting aside a default judgment.") (citations omitted); *Lichtenstein v. Jewelart, Inc*., 95 F.R.D. 511, 513 (E.D.N.Y. 1982) ("Because the entry

of default under Rule 55(a) is largely a formal matter performed by the court clerk, the standard for granting a Rule 55(c) motion is lower than the 'excusable neglect' standard for opening a default judgment under Rule 60(b).").

With this forgiving standard in mind, Gerova's default must be set aside.

i. <u>Gerova's Default Was Not Willful</u>**.**

As set forth above, Gerova was never served with Katten's Summons and Complaint. Scher Aff. ¶¶ 2-7.  As such, Gerova cannot – by definition – have willfully defaulted to a Complaint it never had notice of, let alone never received.  Gerova clearly meets the first prong of the 'good faith' standard.

ii. <u>Katten Can Demonstrate No Prejudice From Having to Litigate This Less Than Two-Month-Old Case on the Merits.</u>

Katten has not – and cannot – claim prejudice would result from setting aside the default entered just two weeks ago on March 14, 2011.  Affidavit ¶ 20 and Ex. 4.  Yet even if it could, the prejudice would be of its own making, as it failed to properly serve Gerova in the less than two months that have passed since it filed its Complaint on February 8, 2011.

Although a defendant's delay in seeking relief from default could be a factor in a Court's determination as to whether to grant the requested relief, there is simply no delay – let alone prejudicial delay – here.  In fact, as Gerova just learned of this action, and the default entered against it, on March 28, 2011 and only retained counsel on March 30, 2011, it could hardly have moved faster in seeking the requested relief.  Scher Aff. ¶ 7.  "Where no prejudice is shown, courts often deny motions for default judgments." *Albert Levine Associates, Inc. v. Kershner*, 45 F.R.D. 450, 451 (S.D.N.Y. 1968) (citations omitted).

Accordingly, Gerova clearly meets the second prong of the 'good cause' standard as well.

8

iii.  <u>Gerova Has a Meritorious Defense.</u>

As set forth in the supporting Scher Affidavit and the Agreements themselves, Katten has grossly overreached in seeking more than $203,296.56 by way of its Complaint and requested default judgment – completely ignoring the "maximum amount … not to exceed $150,000," now $125,000 given Gerova's earlier partial payment – set forth in Section 9.1 of the Agreements upon which it purports to rely.  Compl. Ex. A § 9.1; *See also* Scher Aff. ¶ 9.

Further, Katten attempts to skip several evidentiary steps in conclusorily asserting that (i) it has fully performed all of the obligations it was required to perform, under the Agreements or otherwise, which Gerova expressly disputes, (ii) all of its fees are recoverable, without any reasonableness analysis, (iii) Gerova is responsible for Katten's fees as a successor in interest to ASSAC without any real evidence for that proposition, and (iv) it is an intended third party beneficiary under the Agreements between ASSAC and the Wimbledon Parties, among others. Scher Aff. ¶ 10.  Gerova fully intends to challenge each of Katten's evidentiary assumptions in this litigation.  *Id.*

Further, it is not at all clear whether some offset or reduction might apply for fees already paid to Katten by the Wimbledon Parties, or other "Transaction Costs" already paid by ASSAC or Gerova.  Scher Aff. ¶ 10.  Finally, it is unclear whether there was any consideration for the alleged statements by Michael Hlavsa, which occurred well after the deal closed, or whether or to what extent his purported statements legally bound Gerova.

Simply put, Gerova has meritorious defenses to Katten's lawsuit, and given the applicable standard, should be permitted its day in court to present those defenses, and litigate this case on the merits.

## IV.  CONCLUSION.

For all the foregoing reasons, Katten's request for entry of default judgment must be denied.  Further, Gerova's default should be set aside pursuant to Federal Rule of Civil Procedure 55(c), and this case allowed to proceed to trial on the merits.


Dated: April 1, 2011                    SPILLANE WEINGARTEN, LLP

                                        /s/ Alex M. Weingarten_____
                                        Alex M. Weingarten
                                        (pro hac admission pending)

                                        1100 Glendon Ave., Suite 1200
                                        Los Angeles, CA 90024
                                        Phone: (310) 229-9300
                                        Fax: (310) 229-9380
                                        aweingarten@spillaneweingarten.com


                                        Stephen Z. Starr
                                        STARR & STARR, PLLC
                                        260 Madison Ave., 17th Fl.
                                        New York, NY  10016
                                        Phone: (212) 867-8165
                                        Fax:  (212) 867-8139
                                        sstarr@starrandstarr.com

                                        *Counsel to Defendant*
                                        *Gerova Financial Group, Ltd.*